**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 7 |
|  | ) |  |
|  | ) | Case No. 06-10066 (MFW) |
| JOSEPH PENNINGTON, JR., | ) |  |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of the United States Trustee (the "UST") to dismiss the chapter 7 case of Joseph Pennington, Jr. (the "Debtor") for abuse pursuant to section 707(b)(1) and (3) of the Bankruptcy Code. The Motion is opposed by the Debtor. For the reasons stated below, the Court will grant the Motion and dismiss the Debtor's case, unless he converts it to chapter 13.

I.   BACKGROUND

The Debtor filed his voluntary petition under chapter 7 on January 24, 2006. On February 9, 2006, the Debtor filed his Schedules and Statement of Financial Affairs. The Schedules reveal unsecured debt of $18,299 and net monthly income, after expenses, of $91. The meeting of creditors under section 341 was held on March 8, 2006.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

On May 8, 2006, the UST filed its Motion to dismiss, to which the Debtor responded on June 8, 2006.  A hearing on the UST's Motion was held on July 26, 2006.  At that hearing, the UST offered evidence that the Debtor had $430 per month deducted from his paycheck and paid into a savings account.  The Debtor's Schedule I reflects an additional $91 per month in net income available to pay creditors.  As a result, the UST contended that the Debtor really has net monthly income of $521.

At the hearing, the Debtor offered an Amended Schedule J, which he had filed shortly before the hearing, to evidence an additional car expense of $557 per month.  The Debtor admitted, however, that this car payment was not his current expense because subsequent to the filing, he had surrendered that car and bought a less expensive model, which costs $272.77 per month.

The Court admitted the Amended Schedule J, subject to the Debtor submitting a certification verifying the information on it, and took the matter under advisement.  The Debtor subsequently filed a document showing his car insurance premium has increased from the amount reflected on the Amended Schedule J by approximately $43 per month and a statement showing the current car payment has been reduced to $265.29 per month.  The UST filed a post-hearing brief on August 1, 2006.  The matter is ripe for decision.

II.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 & 157(b)(2)(A) & (O).

III. DISCUSSION

The UST seeks dismissal of the Debtor's chapter 7 case pursuant to section 707(b)(1) and (3).  Section 707(b)(1) provides that the Court "may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title if it finds that the granting of relief would be an abuse of the provisions of this chapter."  11 U.S.C. § 707(b)(1).  Section 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption [of abuse] . . . does not arise or is rebutted, the court shall consider -
> (A) whether the debtor filed the petition in bad faith; or
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

Id. at § 707(b)(3).[2]  The UST does not suggest that there is

---

[2] Because the Debtor's income is below the median income in Delaware, no presumption of abuse can arise.  11 U.S.C. § 707(b)(7).

fraud; nor is there any issue relating to the rejection of a personal services contract.  The UST simply asserts that under the totality of the circumstances of the debtor's financial situation, the granting of relief under chapter 7 would be an abuse.  The UST relies largely on precedent under former section 707(b), which held that a case could be dismissed for "substantial abuse."  Courts interpreting that section held that the debtor's ability to repay creditors was the primary determinant of substantial abuse. See, e.g., First U.S.A. v. Lamanna (In re Lamanna), 153 F.3d 1, 5 (1st Cir. 1998) (adopting "totality of the circumstances" test and holding that "courts should regard the debtor's ability to repay out of future disposable income as the primary, but not necessarily conclusive, factor of 'substantial abuse'"); In re Walton, 866 F.2d 981, 984-85 (8th Cir. 1989) (concluding that debtor's ability to pay from future income should be considered in determining substantial abuse and finding that debtor's ability to repay two-thirds of unsecured debt within three years and 100% within five years rebutted the presumption that the debtor should be afforded relief under chapter 7); Zolg v. Kelly (In re Kelly), 841 F.2d 908, 914-15 (9th Cir. 1988) (stating that the primary question in determining substantial abuse is whether the debtor could repay his debts under a chapter 13 plan).

The Debtor raises two defenses. First, the Debtor asserts that his income falls below the median income for Delaware and, therefore, under section 707(b)(7) there cannot be a finding of abuse based on the Debtor's ability to repay his creditors.

The Court recently rejected a similar argument in In re Paret, No. 06-10272, 2006 WL 2138116, at *11 (Bankr. D. Del. Aug. 1, 2006). For the reasons articulated in Paret, the Court will also reject the Debtor's argument in this case. Accord, In re Pak, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006). Instead, the Court concludes that under section 707(b)(3) the Court must determine if the Debtor's chapter 7 filing is an abuse by considering the "totality of the circumstances . . . of the debtor's financial situation" including whether the Debtor has the ability to repay his creditors. 11 U.S.C. § 707(b)(3).

Second, the Debtor argues that for purposes of determining whether he has the ability to repay creditors, the Court must consider his financial condition at the time he filed his petition (when he had a car payment of $557) rather than at the time of the hearing (when he had a car payment of $265.29 and increased insurance premiums of $43). The Debtor argues that the Pak and In re Walker, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006) cases support his position.

The UST argues that neither case supports the Debtor's argument. The Court agrees with the UST. The Walker Court

5

addressed the issue of whether car payments due at the time of filing were used for purposes of the means test under section 707(b)(2), but not for purposes of the totality of the circumstances test under section 707(b)(3). Id. at *2.[3]

Similarly, the Pak case does not support the Debtor's argument that the Court may only look at the Debtor's financial condition as of the date of the filing. The Pak Court, in determining that it must consider the Debtor's current income rather than income as of the petition date, considered the standard for confirmation of a chapter 13 plan, which is based on the Debtor's "projected disposable income" under section 1325(b)(3). 343 B.R. at 244-45.

The UST further argues that prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), courts routinely excluded payments due on debt secured by collateral that was subsequently surrendered by the debtor. See, e.g., In re Hall, 258 B.R. 45 (Bankr. M.D. Fla. 2001); In re Vianese, 192 B.R. 61 (Bankr. N.D.N.Y. 1996); In re Day, 77 B.R. 225, 226-28 (Bankr. D.N.D. 1987). The UST argues

---

[3] The Walker Court held that car payments due at the time of the filing must be included, even though the car was subsequently surrendered, based on the "plain language" of section 707(b)(2). 2006 WL 1314125 at *4. That section requires that the Court consider those amounts that are "scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii).

6

that precedent is still applicable.

The cases cited by the UST, however, are less than compelling. In <u>Hall</u>, the payment for the expired car lease was not included by consent of the debtors. 258 B.R. at 52. In <u>Vianese</u>, the Court deducted the car payment from expenses because it was a business debt, rather than consumer debt, and not because the car had been surrendered. 192 B.R. at 68. Finally, in <u>Day</u>, the Court apparently deducted all payments on secured debt, even debt secured by a car that had not been surrendered.[4]

The question presented to this Court is whether the Court, in considering the "totality of the circumstances . . . of the debtor's financial situation" is limited to the Debtor's financial situation as of the date of the filing of the petition or may/must consider the Debtor's financial situation at the time the motion to dismiss is heard.

A ruling that the Court may only consider the Debtor's financial situation at the time of the filing would cut both ways. If a debtor incurred additional expenses post-petition (for example, he needed a new car or had additional unexpected

---

[4] The <u>Day</u> Court noted that the debtor's monthly expenses totaled $967 "including an indicated payment of $546.00 per month toward bank loans and creditor payments." 77 B.R. at 226. Although the debtor had surrendered much of the collateral, he had retained the car. <u>Id.</u> That entire expense was later deducted by the Court in considering the debtor's ability to pay: "it appears at the present time there exists, after elimination of bank and creditor payments, a budgetary excess of $390.00 per month." <u>Id.</u> at 228.

medical expenses), the Court would not be able to consider it. Such an arbitrary rule is not mandated by the language of the Code, nor does it appear to be reasonable.

Contrary to such a restrictive reading of the Code, the Court concludes that the language of section 707(b)(3) is very broad and was meant to give the Court substantial leeway to consider all aspects of the Debtor's financial condition. There is no indication in the language of the statute or in the legislative history that Congress meant to limit temporally the Court's consideration of the Debtor's financial condition when determining whether to dismiss a case for abuse. Therefore, the Court concludes that it must consider the Debtor's financial condition at the time of the hearing on the motion to dismiss in determining whether granting chapter 7 relief is an abuse under section 707(b)(3).

This ruling is consistent with the "substantial abuse" cases under former section 707(b). See, e.g., Lamanna, 153 F.3d at 5 (considering debtor's future income and expenses in applying "totality of the circumstances" test); Green v. Staples (In re Green), 934 F.2d 568, 572 (4th Cir. 1991) (holding that "[e]xploring . . . the relation of the debtor's future income to his future necessary expenses, allows the court to determine more accurately whether the particular debtor's case exemplifies the real concern behind Section 707(b): abuse of the bankruptcy

8

process by a debtor seeking to take unfair advantage of his creditors").

This conclusion is also consistent with cases which hold that in determining confirmation of a chapter 13 plan, the Court must consider the Debtor's future, rather than historical, income and expenses. See, e.g., In re Demonica, 345 B.R. 895, 900 (Bankr. N.D. Ill. 2006) (holding that to confirm chapter 13 plan, court must consider projected or anticipated income, not income as of petition date); In re McGuire, 342 B.R. 608, 614 (Bankr. W.D. Mo. 2006) (noting that if debtor requires a new car during life of chapter 13 plan, plan payments can be adjusted to account for that new expense); In re Jass, 340 B.R. 411, 418 (holding that in considering expenses under section 1325(b), court must apply standards under section 707(b)(2)(B) and allow a debtor who fails the means test to rebut the presumption of abuse by showing special circumstances such as a change in income or expenses); In re Hardacre, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006) (concluding that chapter 13 plan confirmation "must be based upon the debtor's anticipated income during the term of the plan, not merely an average of her prepetition income"). Because the effect of a threatened dismissal of a chapter 7 case is often conversion to chapter 13, it is significant to consider how the income and expenses of the Debtor would be treated in chapter 13.

Considering the Debtor's anticipated income and expenses in this case requires the Court to acknowledge that the Debtor is no longer paying $557 for a car. The Debtor's net monthly income of $521 less his current car payment and additional car insurance of $308.29 leaves disposable income of $212.71 per month. With this net income, the Debtor is able to repay 42% of his unsecured debt in a three-year plan and 69% of his unsecured debt in a five-year plan. Because this is significantly above the 25% threshold where abuse is presumed, the Court concludes that it would be an abuse to grant chapter 7 relief to the Debtor. 11 U.S.C. § 707(b)(2)(A)(i)(I). See Hon. Eugene R. Wedoff, <u>Judicial Discretion to Find Abuse Under § 707(b)(3)</u>, Am. Bankr. Inst. Journal, April 2006, at 52 (concluding that "the [25% repayment] threshold [contained in section 707(b)(2)] fixes the level at which debt-paying ability becomes abusive of chapter 7. When judges are required to make determinations of abuse under § 707(b)(3), they should accordingly use the means-test threshold: If a debtor's actual disposable income, determined by the court, is below that threshold, there should be no finding of abuse based on debt-paying ability; if disposable income meets or exceeds the threshold, abuse should be found.")

IV.  CONCLUSION

    For the foregoing reasons, the Court concludes that the Debtor has the ability to repay his creditors and granting relief under chapter 7 would be an abuse.  The Court will, accordingly, grant the UST's Motion to Dismiss unless the Debtor converts his case to a case under chapter 13 within 30 days of the entry of the Court's order.

    An appropriate order is attached.

                                               BY THE COURT:

Dated: August 30, 2006          Mary F. Walrath
                                    United States Bankruptcy Judge